IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                    CASE NO. 15-06919 (ESL)

DEBORAH ANN KERSTING                      CHAPTER 7

    Debtor

OPINION AND ORDER

This case is before the court upon the *Motion for Summary Judgment and Memorandum of Law in Support Thereof* filed by Mr. Tirso R. Castillo (hereinafter referred to as "Mr. Castillo" or "Creditor") (Docket No. 61) and the Debtor's *Opposition to Motion for Summary Judgment* (Docket No. 70). Mr. Castillo argues that: (i) Debtor's motion for lien avoidance should be denied because the Debtor acquired her property interest after the lien was fixed to the real property. Therefore, the lien is not considered to impair Debtor's exemption under 11 U.S.C. §522(f)(1)(A) because the Debtor did not have a property interest at the time the lien was fixed since at the time ownership of the property was vested 100% in the conjugal partnership (which is a separate legal entity). Neither the Debtor nor her late husband had a property interest in the property at the time Mr. Castillo's lien was fixed. The Debtor was vested with a property interest in her individual capacity on December 6, 2014, the date the conjugal partnership dissolved; (ii) in the alternative, at most, Debtor's interest over the real property was a 50% interest over the property since the remaining 50% interest over the property corresponded to her husband's share (which would later become part of the Decedent's estate). Under this scenario, the lien fixed over 50% interest of the property that belonged to her late husband would be unavoidable; and (iii) the Debtor's claim of exemption is limited to the equity on the property after deducting the liens recorded over the same. The Debtor contends that: (i) upon filing for bankruptcy she has a right to claim 100% of the

homestead exemption over the property afforded by Article 6 of the Puerto Rico's Homestead Protection Act No. 195 enacted on September 13, 2011 (the "Home Protection Act"), 31 L.P.R.A. §§ 1858 *et seq.*, as amended, that provides for such protection, and 11 U.S.C. §522(f) which provides the judicial lien avoidance mechanism. Moreover, the Home Protection Deed was executed and recorded on February 8, 2012 prior to the passing away of Debtor's husband; and (ii) the net effect of the heirs' rejection of the inheritance was an undivided inheritance community property that remained with Debtor by operation of law. For the reasons stated below, Mr. Castillo's motion for summary judgment is denied.

Jurisdiction

The court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a).  This is a core proceeding pursuant to 28 U.S.C. §157(b)(1) and (b)(2)(B), (K).  Venue of this proceeding is proper under 28 U.S.C. §§ 1408 and 1409.

Procedural Background

The Debtor filed a Chapter 7 bankruptcy petition on September 7, 2015. The Debtor included the residential property in *Schedule A-Real Property* and disclosed that the nature of her interest in the property is fee simple ownership. The Debtor disclosed in Schedule A that the current value of the residential property is in the amount of $115,000 and the amount of the secured claim is $98,709.05. The Debtor disclosed in *Schedule D- Creditors Holding Secured Claims* that the two (2) secured claimants were Banco Popular de Puerto Rico (hereinafter referred to as "BPPR") with a mortgage claim over the residential property in the amount of $20,520.98 and Tirso Rafael Castillo as a creditor with a judicial lien recorded against the real property in the amount of $78,188.07. The Debtor in *Schedule C- Property Claimed as Exempt* disclosed a homestead exemption in the amount of $115,000 under Puerto Rico's Homestead Protection Act No. 195 enacted on September 13, 2011 (the "Home Protection Act"), 31 L.P.R.A. §§ 1858 *et seq.*, as amended. On September 8, 2015, the Debtor filed a *Motion Seeking Avoidance of Judicial Lien Pursuant to 11 U.S.C. §522(f)* (Docket No. 6). On October 5, 2015, the *Motion Seeking*

*Avoidance of Judicial Lien Pursuant to 11 U.S.C. §522(f)* was granted by the court since the same was unopposed (Docket No. 13).

On October 14, 2015, the Debtor filed a *Motion Informing Filing and Service of Amended Schedule F* to include as unsecured the claim of Tirso Rafael Castillo in the amount of $78,188.07 given that the court had granted the unopposed lien avoidance motion (Docket No. 15).   On October 14, 2015, the Chapter 7 Trustee (hereinafter referred to as "Trustee") filed a *Notice of Abandonment of Property and Request for Clerk to Notice* in which he disclosed that the residential property was amongst the properties abandoned because it had no value to the estate due to the amount of $98,709.05 that is secured and the $115,000 pertaining to the claimed exemption (Docket No. 17). Also, on October 14, 2015, the Trustee filed the *Chapter 7 Trustee's Report of No Distribution* (Docket No. 18).

On November 12, 2015, the Debtor filed a *Motion Informing Filing and Service of Amended Schedule F* to update party in interest Tirso Rafael Castillo's mailing address (Docket No. 27). On November 12, 2015, creditor Tirso R. Castillo filed a *Motion to Set Aside Order Avoiding Lien Entered at Docket 13* based upon the allegations that Debtor failed to provide the creditor's correct mailing address which had been informed to the Debtor four months prior to the filing of the bankruptcy petition in a motion filed in the state court case. Thus, Mr. Castillo was not notified of important deadlines related to the bankruptcy process inclusive of the *Motion to Avoid Lien* and did not file a timely opposition to Debtor's *Motion to Avoid Lien* (Docket No. 28, Exhibit A). On November 12, 2015, Mr. Castillo filed his *Answer to Motion for Avoidance of Lien* (Docket No. 29).  On November 25, 2015, the Debtor filed her *Opposition to 'Motion to Set Aside Order Avoiding Lien Entered at Docket 13'* (Docket No. 35). On December 16, 2015, Mr. Castillo filed his *Reply to 'Opposition to Motion to Set Aside Order'* in which he requested the court to grant the present motion and set aside the Order granting the Debtor's *Motion for Avoidance of Lien entered at Docket 13* (Docket No. 44). On December 29, 2015, the court granted Mr. Castillo's motion requesting to set aside the Order granting Debtor's *Motion for*

*Avoidance of Lien entered at Docket #13* (Docket No. 44). The court stated that it agreed with the creditor's factual and legal analysis (Docket No. 47).

On November 12, 2015, Mr. Castillo filed his *Objection to Debtor's Claim of Exemption* premised upon the following: (i) the Debtor is not the sole owner of the real property in which she claimed the homestead exemption because half of the property belongs to the estate of her deceased husband, Mr. Larry Fritz Kersting. Thus, the Debtor cannot claim exempt property that does not belong to her; and (ii) even if Mr. Larry Fritz Kersting estate was settled and the Debtor transferred to herself the interest that belonged to her husband's estate, then the value of such transfer should be reduced from Debtor's claimed exemption pursuant to 11 U.S.C. §522(o) (Docket No. 30).  Also, on November 12, 2015, Mr. Castillo filed an *Objection to Abandonment of Property* based upon whether he prevails in his objection to Debtor's homestead exemption over the real property then the property would remain property of the bankruptcy estate (Docket No. 31).  On November 25, 2015, the Debtor filed a *Motion Requesting 30 Day Extension to Answer Objection to Abandonment of Property* (Docket No. 33). The same was granted on December 2, 2015 (Docket No. 36). On November 25, 2015, the Debtor filed a *Motion Requesting 30-Day Extension to Answer Objection to Debtor's Claim of Exemptions* (Docket No. 34). The same was granted on December 2, 2015 (Docket No. 37).

On December 27, 2015, the Debtor filed her *Opposition to 'Objection to Debtor's Claim of Exemption'* (Docket No. 45). On December 27, 2015, the Debtor filed her *Opposition to 'Objection to Abandonment of Property'* (Docket No. 46).

On December 30, 2015, the Debtor filed a second *Motion Seeking Avoidance of Judicial Lien Pursuant to 11 U.S.C. §522(f)* arguing that: (i) pursuant to the Home Protection Act, the Debtor has a right to claim the homestead exemption over the entire value of her home, which is $115,000; (ii) section 522(f)(1)(A) and 522(f)(2)(A) allow the debtor to avoid the fixing of a judicial lien on an interest of the debtor in property that impairs an exemption to which the debtor would have been entitled under subsection (b) of this section. In the instant case, Mr. Castillo's judicial lien impairs the Debtor's homestead exemption; (iii) the judicial lien is impairing

Debtor's homestead exemption pursuant to 11 U.S.C. §522(f)(2)(A) because the sum of the lien ($78,188.07) plus all other liens such as the mortgage lien ($18,900) and the amount of the exemption that the debtor could claim ($115,000) if there were no liens exceeds the value that the debtor's interest in the property would have in the absence of liens. Thus, in this case, the summation of $212,088.07 ($78,188.07 + $18,900 + $115,000) exceeds the Debtor's interest in the property ($115,000) absent any liens; and (iv) Debtor's claimed exemption takes precedence over judicial liens causing the lien to be avoided reverting to unsecured class (Docket No. 48). On January 25, 2015, Mr. Castillo filed his *Answer to Motion for Avoidance of Lien* (Docket No. 54).

On January 26, 2016, Mr. Castillo filed his *Reply to Debtor's Opposition to Creditor's Objection to Claim of Homestead Exemption* (Docket No. 55). On February 5, 2016, the Debtor filed her *Sur-Reply to 'Reply to Debtor's Opposition to Creditor's Objection to Claim Homestead Exemption'* (Docket No. 59).

Mr. Castillo also filed an adversary proceeding (No. 15-00296) on December 14, 2015 requesting the denial of discharge and the non-dischargeability of a debt pursuant to 11 U.S.C. §§727(a) and 523(a)(4), and (a)(6). On September 29, 2016, Plaintiff Castillo filed a *Notice of Voluntary Dismissal* (Adversary Proceeding 15-00296, Docket No. 30[1]). On October 5, 2016, the court granted Plaintiff's voluntary dismissal of the adversary proceeding (Adversary proceeding, Docket Nos. 31 & 32).

Subsequently, on September 29, 2016, Mr. Castillo filed a *Statement of Uncontested Facts* (Docket No. 60). On said date, the creditor also filed a *Motion for Summary Judgment and Memorandum of Law* requesting the court to enter judgment denying Debtor's motion for avoidance of lien and finding that the Debtor's claim of exemption is limited to the equity on the property after deducting the liens recorded over the same (Docket No. 61). On October 13, 2016, the Debtor filed a *Motion Requesting 10-Day Extension to Answer 'Motion for Summary*

---

[1] References to the adversary proceeding are to the entries and documents filed in the adversary case, case number 15-00296 (ESL).)

*Judgment and Memorandum of Law in Support Thereof'* (Docket No. 65). The same was granted on October 14, 2016 (Docket No. 66). On October 24, 2016, the Debtor filed her *Opposition to Motion for Summary Judgment* contending that upon filing for bankruptcy protection she has the right to claim 100% of the homestead exemption provided by the Home Protection Act. Moreover, Debtor requests the avoidance of the judicial lien pursuant to 11 U.S.C. §522(f) that encumbers the homestead exemption (Docket No. 70). Subsequently, on December 7, 2016, Mr. Castillo filed a *Motion Submitting Document: Certification from the Property Registry* (Docket No. 71).

The parties agree as to the following uncontested material facts (Docket Nos. 60 & 70):

Material Uncontested Facts

1.  Deborah A. Bergeron and Larry Fritz Kersting married on July 30, 1978. They had two (2) children: Katurah and Kalim Kersting Bergeron.

2.  Deborah A. Bergeron and Larry Fritz Kersting purchased in the year 1987 the residential house located at Urbanization Los Angeles, 136 Austral Street, Carolina, Puerto Rico, 00979-1740.

3.   On July 26, 2006, Mr. Castillo d/b/a T.C. Electrical Services filed a complaint before the San Juan State Court against the Debtor and her late husband, Larry Fritz Kersting for breach of contract, collection of moneys and damages (Case No. KAC2006-4321).

4.  On September 9, 2011, the San Juan State Court entered judgment in favor of Mr. Castillo in the amount of $78,188.07.

5.  On January 5, 2012, the judgment in favor of Mr. Castillo was presented for registration over the residence located in Carolina and the same was recorded on August 10, 2012 (Docket No. 71).

6.  On March 6, 2012, the Debtor and her husband presented the Home Protection Deed

for registration in the Carolina Property Registry and the same was recorded on August 10, 2012 (Docket No. 71).

7. On December 6, 2014, Mr. Larry Fritz Kersting passed away. Mr. Kersting died intestate and was survived by his wife, a son and a daughter.

8. On January 4, 2015, Katurah and Kalim Kersting Bergeron executed a public deed of "Repudiation of Inheritance" in which they waived all rights, claims and interests they had in the estate of their deceased father.

9. There has not been an acceptance of inheritance by the Debtor that she may be entitled from the estate of Mr. Kersting (Adversary Proceeding, Docket No. 11- Joint Pre-Trial Report).

10. The Debtor on Schedule A disclosed that she is the owner of the real property located at Los Angeles Urbanization, 136 Austral Street, Carolina, Puerto Rico. The Debtor scheduled the value of the property in the amount of $115,000. She also disclosed that "Settlement of the Dece[dent]'s Estate has not been initiated."

11. The Debtor on Schedule C claimed an exemption pursuant to the Home Protection Act in the amount of $115,000 over the real property.

Position of the Parties

*Mr. Castillo (Creditor)*

In order for the Debtor to prevail in a lien avoidance action pursuant to 11 U.S.C. §522(f), two (2) requirements must be satisfied; namely: (i) the lien fixed over the property must be a judicial lien; and (ii) the lien must impair an exemption. To determine whether a lien impairs an exemption, the following two (2) requirements must be satisfied: (i) the debtor must have had an ownership interest in the property before the lien attached; and (ii) avoidance of the lien must entitle the debtor to a state or federal exemption. See Farrey v. Sanderfoot, 500 U.S. 291, 111 S. Ct. 1825, 114 L. Ed. 2d 337 (1991); Owen v. Owen, 500 U.S. 305, 111 S. Ct. 1833, 114 L.Ed. 2d 350 (1991).

Mr. Castillo argues that Debtor's motion for lien avoidance should be denied because the Debtor acquired her property interest after the lien was fixed to the real property. Therefore, the

lien is not considered to impair Debtor's exemption under 11 U.S.C. §522(f)(1)(A) because the Debtor did not have a property interest at the time the lien was fixed since at the time ownership of the property was vested 100% in the conjugal partnership, which Mr. Castillo argues is a separate legal entity. The spouses, in their individual personal capacity do not have a property interest in the partnership's property. Their individual property interests remain in the conjugal partnership until dissolution of the same. See Article 1307 of the Civil Code of Puerto Rico ("PR Civil Code"), 31 L.P.R.A. §3647. Once a conjugal partnership is dissolved, the conjugal property regime is converted to an ordinary community regime which is referred to as the "post-conjugal community." See Pagán Hernández v. Registradora, 177 D.P.R. 522 (2009). In the post-conjugal community, the former spouses become joint tenants ("comuneros") with an undivided and equal property interest over all the property that belonged to the conjugal partnership. See Roselló Puig v. Rodríguez Cruz, 183 D.P.R. 81 (2011); Cruz Roche v. De Jesús Colón, 2011 TSPR 95; Muñiz Noriega v. Muñoz, 177 D.P.R. 967 (2010). The post-conjugal community regime lasts until the marital property is "liquidated" pursuant to the liquidation process established in the Civil Code.

Mr. Castillo argues that the moment the partnership dissolves as the result of the death of one of the spouses is the moment when the spouse acquires for the first time, a property interest over the property that belonged to the conjugal partnership. The Creditor argues that the Debtor acquired her individual property interest after the lien was fixed to the real property. Therefore, the lien is not considered to impair debtor's exemption under section 522(f) because the Debtor did not have a property interest at the time the lien was fixed, as the property belonged to the conjugal partnership and not to the Debtor individually. The Creditor argues in the alternative that, at best, the Debtor has a 50% interest over the property since the remaining 50% corresponds to the Debtor's husband share or rather to his estate. Under this scenario, the Debtor could avoid the lien only as to the interest she possessed at the time the lien was fixed which is 50% of the property but the decedent's remaining 50% interest would be unavoidable (Docket No. 61).

Mr. Castillo also argues that the Debtor's contention that she became the "whole owner of the property as a direct result of the automatic operation of law" given that her children

-8-

executed a deed to repudiate their father's inheritance is misplaced because the Debtor has admitted that she has not accepted the inheritance of Mr. Kersting. Property interests over inheritance property are not automatically vested to the heirs upon the Decedent's death. It is upon the acceptance of the inheritance that the property interests are vested onto the heirs. See Rivera v. Monge, 117 D.P.R. 644; Arrieta v. Chinea vda. De Arrieta, 139 D.P.R. 525, 532-533 (1995). Thus, the Debtor does not have a property interest over any property that is part of Mr. Kersting's estate, therefore she cannot be considered to be the owner of 100% of the residence and may not avoid the lien in its entirety. Even if the Debtor had accepted the inheritance, it was not until her children executed the deed of repudiation on January 5, 2015 that she acquired the share of the real property that belonged to Mr. Kersting's estate. However, Mr. Castillo's lien had already fixed over the husband's share of the real property and pursuant to section 522(f) the Debtor would be unable to avoid the lien that had previously attached to her husband's share before she became the sole owner of the real property (Docket No. 61).

*Debtor*

The Debtor argues that the effect of the Debtor's children repudiating their inheritance is that she became the sole owner of the real property by operation of law. The Decedent's estate remained undivided at the time the Debtor filed a Chapter 7 bankruptcy petition on September 7, 2015. All of the Debtor's legal property plus all her equitable interests in property became property of the bankruptcy estate pursuant to 11 U.S.C. §541. Thus, the Debtor claimed exemptions over all the undivided property as of the commencement of the case. Undivided property included the entirety of the residential property. The Debtor argues that she may claim 100% of the homestead protection pursuant to Article 6 of the Home Protection Act because her husband and she filed the homestead deed on February 8, 2012. The Debtor alleges that pursuant to Article 6 of the Home Protection Act she may claim 100% of the homestead exemption over the undivided property interest because she has continued to live in her home.

The Debtor further argues that she can avoid Mr. Castillo's judicial lien pursuant to section 522(f) because the Debtor has maintained an undivided ownership interest prior, during and after

the judicial lien's fixing date (November 22, 2011) given that she has owned and resided in the real property since the year 1987. The judicial lien in controversy indubitably impairs the Debtor's homestead exemption.

Issues

The two key issues are the objection to the Debtor's homestead exemption and the motion seeking avoidance of judicial lien pursuant to 11 U.S.C. §522(f). These issues are intertwined and must be resolved together. The Debtor's claim to the homestead exemption is premised upon the assumption that she is the sole owner of the real property by operation of law (even though no particular article or section from the Civil Code or relevant jurisprudence is referenced). The Debtor's motion for lien avoidance is premised also upon the assumption that the Debtor as the sole owner of the real property, satisfies all of the requirements of section 522(f) and on Article 6 of the Home Protection Act. Article 6 of the Home Protection Act specifically provides that the homestead protection (which consists of providing a shield against attachment, judgment or foreclosure for the debts established in Article 5) shall continue after the death of a spouse for the benefit of the surviving spouse.

The complexity and challenge lies in aligning Article 6 of the Home Protection Act with the requirements of 11 U.S.C. §522(f), as established in the seminal case of Farrey v. Sanderfoot, 500 U.S. 291, 111 S. Ct. 1825, 114 L. Ed. 2d 337 (1991), and its progeny as to whether the Debtor had acquired an ownership interest in the property before the lien attached and whether the Debtor may avoid the lien despite the fact that her ownership interest may have changed subsequent to the attachment of the judicial lien.

The first hurdle is establishing the Debtor's ownership interest at two (2) different moments in time; namely; at the time the Debtor filed her bankruptcy petition (for claiming the homestead exemption) and the time when the lien attached (to avoid the judicial lien). After the Debtor's ownership interest is determined, then the court must analyze whether the Debtor's homestead exemption is being impaired by the Creditor's judicial lien, and whether the same may be avoided pursuant to 11 U.S.C. §522(f).

-10-

The court must first analyze whether the Debtor is entitled to claim a homestead exemption over the real property, if she is not, then we do not have to reach the lien avoidance controversy, that is, whether the Debtor may claim a homestead exemption over a certain participation (undivided quota/hereditary right) of the common mass of the inheritance which constitutes an abstract and global share of the full hereditary patrimony. The court's analysis must also consider the Supreme Court of Puerto Rico's decision in Rivera García v. Hernández Sánchez, Property Registar, 189 D.P.R. 628 (2013), and whether the same is applicable in the instant case, and if not, how it can be differentiated from the facts in this case.

Applicable Law and Analysis

*Standard for Motion for Summary Judgment*

Rule 56 of the Federal Rules of Civil Procedure, is applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure. Summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Bankr. P. 7056; *see also*, In re Colarusso, 382 F.3d 51 (1st Cir. 2004), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986).

The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved."  Wright, Miller & Kane, Federal Practice and Procedure, 3d, Vol 10A, § 2712 at 198.  "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried."  Id. at 202-203.  Summary judgment is not a substitute for a trial of

disputed facts; the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain.  Id. at 205-206.

Summary judgment is warranted where, after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to its case and upon which it carries the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

For there to be a "genuine" issue, facts which are supported by substantial evidence must be in dispute, thereby requiring deference to the finder of fact.  Furthermore, the disputed facts must be "material" or determinative of the outcome of the litigation.  Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976).  When considering a petition for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party.  Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 473 (1962); Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988).

The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment.  Adickes v. Kress & Co., 398 U.S. 144, 157 (1970).  See also López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991).  It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial.  Bias v. Advantage International, Inc., 905 F.2d 1558, 1560-61 (D.C. Cir. 1990), cert. denied, 498 U.S. 958 (1990).

The moving party cannot prevail if any essential element of its claim or defense requires trial.  López, 938 F.2d at 1516.  In addition, the moving party is required to demonstrate that there

is an absence of evidence supporting the nonmoving party's case. Celotex, 477 U.S. at 325. See also, Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury, 842 F.2d at 11. In its opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment. Kennedy v. Josepthal & Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987). See also, Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1172 (1st Cir. 1988); Hahn, 523 F.2d at 464. A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party. Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir. 1980).

The moving party has the burden to establish that it is entitled to summary judgment; no defense is required where an insufficient showing is made. López, 938 F.2d at 1517. The nonmoving party need only oppose a summary judgment motion once the moving party has met its burden. Adickes, 398 U.S. at 159.

For the reasons explained below, this court grants denies Mr. Castillo's *Motion for Summary Judgment*. The relevant material facts are not in controversy and debtor is entitled as a matter of law to claim the homestead exemption over her residence.

*Property of the Bankruptcy Estate and Exemptions in General*

Section 541(a) defines the property that comprises the bankruptcy estate. Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §541(a)(1). This provision is broad and encompasses all rights and interests of the debtor in real property. See Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶ 541.04 (16th ed. 2016) "Even though section 541 provides the framework for determining the scope of the debtor's estate and what property will be included in the estate, it

does not provide any rules for determining whether the debtor has an interest in property in the first place. That gap is generally filled by state law. The Supreme Court has stated that 'Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law… Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.'" Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶ 541.03 (16th ed. 2016) citing Butner v. United States, 440 U.S. 48, 54-55, 99 S. Ct. 914, 917-918, 59 L. Ed. 2d 136 (1979).  Thus, property rights in bankruptcy are created, defined and determined by state law. See Travelers Casualty & Surety Co. of America v. Pacific Gas & Elec. Co., 549 U.S. 443, 451, 127 S. Ct. 1199, 167 L. Ed. 2d 178 (2007), quoting Butner v. United States, 440 U.S. 48, 55, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979). If the debtor's interest in inheritance property arises prior to the filing of the petition, the interest becomes property of the estate pursuant to section 541(a)(1) not 541(a)(5). "This is true regardless of whether the value of such interest has been determined or distributed, or whether the estate of which it is a part is subject to administration." Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶ 541.14 (16th ed. 2016).

When a debtor files a bankruptcy petition, all of debtor's assets become property of the bankruptcy estate [11 U.S.C. § 541], subject to the debtor's right to reclaim certain property as exempt under 11 U.S.C. §522.  See Taylor v. Freeland & Kronz, 503 U.S. 638, 642 (1992). Section 522(b) provides in pertinent part that, "[n]otwithstanding section 541 of this title, an individual debtor may exempt from property of the estate listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection." 11 U.S.C. §522(b).  Under 11 U.S.C. §522(b) a debtor can choose to use either the federal list of exemptions set forth in section 522(d) or the state exemptions. The purpose of the incorporation of state law exemption rights in bankruptcy is to "ensure that the trustee takes in each state whatever would have been available to creditors if the bankruptcy law had not been passed." In re Perez, 302 B.R. 661, 664 (Bankr. D. Ariz. 2003) citing Hanover Nat'l Bank v. Moyses, 186 U.S. 181, 190, 46 L. Ed. 1113, 22 S. Ct. 857 (1902). The debtor must claim the exemption for the same to be effective, if not the property will be

-14-

property of the bankruptcy estate. Moreover, it is a basic principle of bankruptcy law that exemptions are determined as of the date the petition is filed. See Pasquina v. Cunningham (In re Cunningham), 513 F. 3d 318, 324 (1st Cir. 2008) citing In re Friedman, 38 B.R. 275, 276 (Bankr. E.D. Pa. 1984) ("It is hornbook bankruptcy law that a debtor's exemptions are determined as of the time of the filing of his petition.") "This focus on the facts and law as they exist on the petition date is commonly referred to as the "snapshot" approach (or rule) and often adopts the vernacular that exemptions become "fixed" on that date." In re Williams, 515 B.R. 395, 401 (Bankr. D. Mass. 2014) citing In re Cunningham , 513 F. 3d at 324.

Property becomes exempt by operation of law when no objections are filed. See 11 U.S.C. § 522(l). But the mere fact that debtors claim an exemption does not necessarily mean that they are entitled to it, since there must be compliance with statutory requirements and an order to that effect. See 9A Am. Jur. 2d Bankruptcy § 1392; In re Gutierrez Hernández, 2012 Bankr. LEXIS 2735 at *8, 2012 WL 2202931 at *2 (Bankr. D.P.R. 2012); In re Rolland, 317 B.R. 402, 412 (Bankr. C.D.Cal. 2004); In re Colvin, 288 B.R. 477, 483 (Bankr. E.D.Mi. 2003); Carlucci & Legum v. Murray (In re Murray), 249 B.R. 223, 230 (E.D.N.Y. 2000). Exemptions should be liberally construed in furtherance of the debtor's right to a "fresh start". In re Gutierrez Hernández, 2012 Bankr. LEXIS 2735 at *5, 2012 WL 2202931 at *2; In re Newton, 2002 Bankr. LEXIS 2089 at *7, 2002 WL 34694092 at *3 (B.A.P. 1st Cir. 2002); Christo v. Yellin (In re Christo), 228 B.R. 48, 50 (B.A.P. 1st Cir. 1999). Moreover, if the debtor claims the homestead exemption under state law, the bankruptcy court must analyze the applicable state statute and decisions interpreting the nature and extent of the exemption rights regarding the homestead. See Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 522.10[2] (16th ed. 2016). Therefore, if the debtor claims property exempt under state law, he or she must comply with any recordation requirements prescribed by state law in order to claim property as exempt. See Zimmerman v. Morgan, 689 F. 2d 471, 472 (4th Cir. 1982).

In the instant case, the Debtor alleges that she is the sole owner of the real property over which she claimed the homestead exemption by operation of law because her two children

-15-

executed a public deed of "Repudiation of Inheritance" on January 4, 2015, in which they waived all rights, claims and interests they had in the estate of their deceased father. The Creditor disagrees and argues that property interests over inheritance property are not automatically vested to the heirs upon the Decedent's death. It is upon the acceptance of the inheritance that the property interests are vested onto the heirs. The Debtor has admitted that she has not accepted the Decedent's inheritance, thus, the property interests have not vested onto the heir(s). In the instant case allegedly to the Debtor. Therefore, the Debtor's interest in the real property at the time that she filed her bankruptcy petition must be determined to ascertain whether she has a right to claim the homestead exemption.

*The Debtor's Ownership Right in the Real Property (Principal Residence)*

In Puerto Rico, the conjugal partnership is created on the day of marriage. Article 1296 of the Civil Code, 31 L.P.R.A. §3622.  Article 1301 of the Civil Code provides that the property of the conjugal partnership will consist of: (1) property acquired for a valuable consideration during the marriage at the expense of the partnership property, whether the acquisition is made for the partnership or for one of the spouses only; (2) that obtained by the industry, salaries, or work of the spouses or of either of them; and (3) the fruits, income, or interest collected or accrued during the marriage, coming from the partnership property, or from that which belongs to either one of the spouses." 31 L.P.R.A. §3622 and 3641.  In re Padilla, 2011 Bankr. LEXIS 4662 at **10-11, 2011 WL 5911243 at *4 (Bankr. D.P.R. 2011).

Article 95 of the Civil Code provides: "[m]arriage is dissolved in the following cases: (1) by the death of the husband or wife; (2) by divorce legally obtained; and (3) if the marriage be declared null." 31 L.P.R.A. 301. The conjugal partnership is terminated and liquidated only by death or a final decree terminating it. 31 L.P.R.A. §§3681 and 3712.  The conjugal partnership is regulated by Articles 1295 to 1326 of the Civil Code, 31 L.P.R.A. §§ 3621-3701. Article 1295 of the Civil Code provides: "[b]y virtue of the conjugal partnership the earnings of profits indiscriminately obtained by either of the spouses during the marriage shall belong to the husband and the wife, share and share alike, upon the dissolution of the marriage." 31 L.P.R. §3621. Article

1298 of the Civil Code provides: "[t]he conjugal partnership shall be governed by the rules of articles of partnership in all that does not conflict with the express provisions of this chapter." 31 L.P.R.A. §3624. Article 1322 of the Civil Code provides: "[t]he net remainder of the partnership property shall be divided, share and share alike, between the husband and the wife, or their respective heirs. See also; Betancourt v. Rodriguez, 17 P.R.R. 5 (1911) ("Upon the dissolution of the conjugal partnership by the death of the wife, the husband cannot be reputed absolute owner of the property belonging to the conjugal partnership, or of some of said property, until a liquidation and partition has been made and he has acquired by adjudication, the exclusive ownership thereof"). Upon dissolution of the conjugal partnership by death, the surviving spouse is entitled to receive one-half of the property acquired during the marriage. See Márquez v. Jordi, 19 P.R.R. 679 (1913) ("The fundamental element in the law governing conjugal partnerships is the right of each of the spouses to receive one-half of the property acquired during the marriage at the dissolution of the same and this is a vested right which cannot be modified by the Legislature without working a hardship upon the spouses who contracted the marriage under that law"); See also; Fernández-Cerra v. Commercial Ins. Co., 344 F. Supp. 314 (D.P.R. 1972) ("Upon dissolution of marriage, by death or otherwise, the conjugal partnership is liquidated and the husband and wife or their heirs are entitled to one-half of all the property earned by both during the marriage"); López Valdés v. Tribunal Superior, 96 D.P.R. 779 (1968) ("A widow (innocent spouse divorced from the predecessor) has an undivided interest of half of the property constituting the conjugal partnership, not by inheritance, but as owner").

Thus, the Debtor, due to the dissolution of the conjugal partnership by death has an undivided ownership interest of half the property that was part of the conjugal partnership, including one-half of the real property (personal residence), which was acquired during the marriage and formed part of the conjugal partnership.

*Succession, Inheritance, the Hereditary Community and the Home Protection Act*

The following facts are uncontested. The Debtor and her late husband appear as the titleholders of the real property in controversy pursuant to the November 15, 2016 certification from the Property Registrar (Docket No. 71).  On January 5, 2012, the judgment in favor of Mr. Castillo was presented for registration over the residence located in Carolina and that the same was recorded on August 10, 2012.  On March 6, 2012 the Debtor and her late husband presented the Home Protection Deed for registration in the Carolina Property Registry and the same was recorded on August 10, 2012 (Docket No. 71). Mr. Larry Fritz Kersting passed away on December 6, 2014. Mr. Kersting died intestate and was survived by his wife, a son and a daughter. Subsequently, on January 4, 2015, Katurah and Kalim Kersting Bergeron executed a public deed of "Repudiation of Inheritance" in which they waived all rights, claims and interests they had in the estate of their deceased father.

Under the Puerto Rico legal system, a petition for declaration of heirship *ab intestato* is the procedure used, absent a validly executed will, to guarantee the transfer of a decedent's estate to the legitimate heirs. See Pueblo v. Flores Betancourt, 124 D.P.R. 867, 879, 24 P.R. Offic. Trans. 617, 627 (1989). "Only for actions founded on a hereditary right is the declaration of heirship required." Díaz v. Water Resources Authority, 71 P.R.R. 872 (1950). Article 552 of the Code of Civil Procedure, 32 L.P.R.A. §2301 establishes the procedure for declaration of heirship. Article 552 provides in pertinent part:

> "[i]n case of intestate succession, or of the nullity of a will, those who may have an interest in the inheritance may petition the Court of First Instance of the last domicile of the decedent, or of the place where his property is of situated, for the issuance of the corresponding order of heir's declaration" 32 L.P.R.A. §2301.

Article 549 of the Civil Code provides that ownership and other property rights are acquired and transmitted by the testate or intestate succession. See 31 L.P.R.A. §1931.  In Rivera Rivera v. Monge Rivera, 117 D.P.R. 464, 17 P.R. Offic. Trans. 561 (1987), the Supreme Court of Puerto Rico had the opportunity to clarify that in Puerto Rico the system of acceptance of the inheritance that prevails is the Roman theory, not the German theory, meaning that inheritance rights are not automatically transmitted to the heir at the time of the decedent's death. The heir

-18-

must either expressly or tacitly accept the inheritance. Thus, under the Roman law theory the property of the decedent does not shift to the heir until he or she either expressly or tacitly accepts the inheritance. It is important to note that the request of a declaration of heirship does not constitute a tacit acceptance. Tacit acceptance means requesting a share in the inheritance. See Rivera Rivera v. Monge Rivera, 117 D.P.R. 464, 479, 17 P.R. Offic. Trans. 561, 577, fn 9 citing Escalona v. Sucesión, 17 P.R.R. 744 (1911). Under the German system the inheritance is automatically acquired upon the decedent's death. Id. at 17 P.R. Offic. Trans. 561, 568 citing 2 R. Roca Sastre, Estudios de Derecho Privado 1 et seq., Madrid. Ed. Rev. Der. Privado (1948). The Supreme Court of Puerto Rico in Rivera Rivera v. Monge Rivera, explained that under the Roman theory, the decedent's death opens the succession, but does not automatically turn the person into an heir meaning that the potential heir must decide to accept, renounce or repudiate the inheritance; if he or she accepts purely and simply, or under benefit of inventory. The Civil Code does not provide a time limit for accepting or renouncing the inheritance, except in the particular cases that fall under Article 959 of the Civil Code, 31 L.P.R.A. §2787[2].

The Supreme Court further explained that under the Roman law system prevalent in Puerto Rico,

> "[t]he offer or call does not turn the person an heir, rather an act of express acceptance is necessary or an act which presupposes that acceptance is tacit. Acquisition of the

[2] Article 959 of the Civil Code provides, "[s]hould a third person in interest institute a suit to compel the heir to accept or to repudiate the inheritance, the Court of First Instance shall fix a period for the latter, not exceeding thirty days, within which he shall declare his intention, warning him that should he not do so the inheritance shall be considered as accepted." 31 L.P.R.A. §2787. Moreover, "… some authorities suggest a thirty-year period if the claim is merged with a real action, Civil Code art. 1853 (31 L.P.R.A. §5293), while others merge it with the partition suit, which has no time limit, Civil Code art. 1865 (31 L.P.R.A. §5295)." Rivera Rivera v. Monge Rivera, 117 D.P.R. 464, 467, 17 P.R. Offic. Trans. 561, 565, fn 2 citing 1 E. González Tejera, Derecho sucesorio puertorriqueño, 154 n. 58, San Juan, Ed. Ramallo (1983); See also; Arrieta Barbosa v. Chinea vda de Arrieta et als., 139 D.P.R. 525, 540 (1995) (The Supreme Court held that the action to claim the inheritance (actio petition hereditatis) prescribes in thirty (30) years from the date that the apparent heir took possession of the property of the inheritance)("Resolvemos, pues, que la acción de petición de herencia prescribe a los treinta (30) años. Conforme al criterio prevaleciente entre la crítica erudite, ese término prescriptivo comienza a correr, desde que el heredero aparente entró en la posesión de los bienes de la herencia").

-19-

inheritance depends, then, on the merger of these two requirements: the offer or call to the succession and the acceptance or *aditio.* The call just vests upon the person called the right to acquire the inheritance by accepting the same, the so-called *ius delationis* or *ius adeundi*. If he exercises this right accepting the inheritance, he does become an heir. He may do so either by express acceptance of the inheritance (*aditio*) or by tacit acceptance, by acts that imply acceptance (*pro herede gestio*). Acts of the mere preservation or administration of the succession property do not imply an acceptance; that is, do not turn the person called into an heir. V-1 J. Puig Brutau, Fundamentos de Derecho Civil 162, Barcelona, Ed. Bosch (2d ed. 1975).

This theory divides the succession into four stages: the opening of the succession, the call, the offer [*delatio*], and the acquisition of the inheritance. 4 L. Díez- Picazo and A. Gullón, Sistema de Derecho Civil 412, Madrid, Ed. Tecnos (2 ed. 1982); F. Espinar Lafuente; La herencia legal y el testamento 142, Barcelona, Ed. Bosch (1956); D. Espín Cánovas, Manual de Derecho Civil español 40, Madrid, Ed. Rev. Der. Privado (5th ed. 1978); 1 J.L. Lacruz Berdejo and F.A. Sancho Rebullida, *Derecho de Sucesiones* 51, Barcelona, Ed. Bosch (1971). According to these commentators, the four stages of the process of acquisition are:

(a) *The opening of the succession*. A succession is always and necessarily opened at the exact moment of a person's death, never before or after. The opening simply means that while the body becomes a corpse, the entire mass of the transmissible legal relationships of the decedent becomes the inheritance awaiting for a successor.

(b) *The call to the inheritance.* This is the call of a living legal person to the inheritance. It may be an actual or virtual call of an heir in the first degree or of others, in the event the first one called does not inherit from the decedent.

(c) *The offer of the inheritance*. "Delata hereditas intelligitur quando quis possit adeundo consequi." The offer /delatio/ goes one step further: not only is there a specific, living person called to the inheritance, but that person may accept the inheritance. The distinguishing characteristic of the offer /delatio/ is the immediate possibility of accepting the inheritance.

(d) *The acquisition*. Means that a person is actually constituted an heir to the –relative— entirety of the transmissible ownership of the decedent.

Some commentators opine that, under the Roman theory, the death of the decedent triggers an offer of the inheritance, equivalent to the time of the delatio "that is but correlative of the 'offer of a contract.'" Espinar Lafuente, *supra*, at 143. In Roca Sastre's words "the mere act of *delatio* triggers an offer of the inheritance, that is, a simple call to be an heir, which only invests the person called with *facultas adquirendi*, that is, a right to acquire the inheritance, also called *ius delationis* or *ius adeundi*," supra, at 5.

According to professor E. González Tejera, in 1 Derecho sucesorio puertorriqueño 33, San Juan, Ed. Ramallo (1983), the opening of the succession creates a "right to acquire the property." In his opinion, 'the legal system contemplates the existence of rights, and

-20-

the holder of such rights, while nonexistent at the moment, will exist in the future.' Id. at 36. Scaevola perfectly describes what constitutes, for those in favor of the Roman theory, the time for acquiring the status of heir:

Property and rights may be transmitted to a person only if that person exists. Transmission in favor of an heir can only take place if he is already an heir. And while the inheritance remains unclaimed, who is the heir? The designated heir is not an heir because he may either accept or renounce the inheritance. Those called by law are in similar position. Can we conclude then that the inheritance is transmitted to the presumptive heir?

Let us go to the point: it is not transmitted to anyone, and the law could have never meant or contemplated such meaning. Those who are closer to the true doctrine are those who deem that the transmission is conditional. But this also presupposes a person to whom the property and rights are transmitted, subject to his acceptance of the inheritance, and such supposition is inadmissible because it is repugnant to the opposite doctrine set forth in the same art. 440: that he who does not accept the inheritance has never owned the property. If the presumptive heir has yet to accept the inheritance, if he may or may not accept it, and thus, has never owned the property, what about the transmission?

The law does provide for the transmission of the property and rights of the decedent, but on hypothetical, purely ideal, abstract legal terms. The transmission is done in favor of the heir; but, who is the heir? Whoever he may be, whoever accepts it. The heir is only known at the time of acceptance; only then does real transmission take place. Up to that point in time, all the rights have been subjected to the acceptance; there has been nothing but a deposit, a retention, a suspension of the delivery. XVII Q.M. Scaevola, Código Civil 422-423, Madrid, Ed. Reus (5th ed. 1944)." Rivera Rivera v. Monge Rivera, 117 D.P.R. 464, 471-474, 17 P.R. Offic. Trans. 561, 569-572.

In the instant case, there is no record that the Decedent's heirs filed a request for a declaration of heirship before the court of First Instance pursuant to Article 552 of the Code of Civil Procedure. It is an uncontested fact that on January 4, 2015, Katurah and Kalim Kersting Bergeron executed a public deed of "Repudiation of Inheritance" in which they waived all rights, claims and interests they had in the estate of their deceased father. The deed of "Repudiation of Inheritance" states that Katurah and Kalim Kersting have decided to repudiate, renounce all rights that they have in the estate of their deceased father. Throughout the deed the legal terms repudiate and renounce are both used. The distinction between the two is important because repudiate and renounce have different legal effects.

The repudiation deed refers to Article 962 of the Civil Code. (Docket No. 45, pgs. 9-11). Article 962 of the Civil Code provides that: "[t]he repudiation of an inheritance shall be made in

a public or authentic instrument, or in writing presented to the part of the Court having jurisdiction in testamentary or intestate proceedings." 31 L.P.R.A. §2790. However, there is no evidence that the deed of "Repudiation of Inheritance" was filed with the state court in conformity with Article 962 of the Civil Code. See Efraín González Tejera, Derecho de Sucesiones, T. 1: La sucesión intestal, 225, fn. 180, San Juan, (Universidad de Puerto Rico ed., (2001).[3] Moreover, article 951 of the Civil Code provides, "[t]he acceptance and repudiation of an inheritance once made are irrevocable, and cannot be impugned except when they are tainted from any of the defects which annul the consent, or when an unknown will appears." 31 L.P.R.A. §2779.

If the deed of "Repudiation of Inheritance" had been filed with the probate court and was considered a valid repudiation, there is still a question left unanswered and that is, whether the Debtor has any grandchildren that may be called as heirs to the Decedent's estate. Article 886 of the Civil Code provides: "[i]f the inheritance is repudiated by the nearest relative should there be one only, or by all the nearest relatives, designated by law, should there be several, those of the following degree shall inherit in their own right, without being able to represent those repudiating the inheritance." 31 L.P.R.A. §2609. Thus, the Debtor's grandchildren, if any, inherit in their own right and not by representation. If the Debtor does not have any grandchildren, then amended Article 909[4], is applicable which provides that if there are no descendants or ancestors, then the surviving spouse succeeds to all of the decedent's property. See Act. No. 170 to Amend Articles 903 and 909 of the Civil Code of Puerto Rico enacted on December 26, 2013.

In the instant case there is no evidence of there being a declaration of heirship or partition of the inheritance before the state probate court or a judicial action filed by the creditor (or an interested third party) pursuant to Article 959 of the Civil Code to compel the heirs either to accept or repudiate the inheritance. Article 953 of the Civil Code provides, "[p]ure and simple

---

[3] Fn. 180: "El artículo 1232 (4), 31 L.P.R.A., sec. 3452(4) nos parece que puede interpretarse como si requiriera que la repudiación de la herencia constara en un document público. El artículo 962 es más claro al disponer que la repudiación de herencia se deberá hacerse en document público o auténtico o por escrito radicado en e tribunal." Id. at 225.

[4] Amended article 909 provides in the Spanish language: "[a] falta de descendientes y ascendientes, sucederá en todos los bienes del difunto el cónyuge sobreviviente. En su defecto, le sucederán sus hermanos y sobrinos, hijos de éstos, sean o no de doble vínculo de la manera establecida en los tres (3) subcapítulos que preceden." 31 L.P.R.A. §2677.

acceptances may be express or implied. An express acceptance is one made in a public or private instrument. Implied acceptance is one made by acts which necessarily imply a wish to accept, or acts which no one should have a right to execute except in the capacity of an heir. Acts of mere preservation, or provisional administration, do not imply the acceptance of the inheritance, if, at the same time, the title and character of heir have not been assumed." 31 L.P.R.A. §2781. Article 954 provides, "[a]n inheritance is considered as accepted: (1) When the heir sells, gives, or assigns his right to a stranger, to all his coheirs, or to one of them. (2) When the heir renounces it, even gratuitously, for the benefit of one or more of his coheirs. (3) When he renounces it for a consideration in favor of all his coheirs indiscriminately, but if this renunciation should be gratuitous, and the coheirs, in whose favor it is made, are those to whom the portion renounced must accrue, the inheritance shall not be considered as accepted." 31 L.P.R.A. §2782.

In Rivera Rivera v. Monge Rivera, Article 369[5] of the Civil Code is referenced to support the Roman theory of acceptance of the inheritance. "[c]ivil Code art. 369 (31 L.P.R.A. §1443), provides that, '[l]a posesión de los bienes hereditarios se entiende trasmitida al heredero sin interrupción y desde el momento de la muerte del causante, en el caso de que llegue a adirse la herencia.' Adir means to accept the inheritance in a tacit or express manner. I Diccionario de la Lengua Española 2 5, Madrid, Ed. Espasa-Calpe (20th ed. 1984). The fact that the Civil Code requires acceptance by the heir before the estate is transmitted, is a clear sign that said legal body has adopted the Roman theory." Id. at 580-581.

At this juncture, what is before the court is a real property whose ownership is fractioned, given that due to the dissolution of the conjugal partnership by death the Debtor has an undivided ownership interest of half of the real property (the personal residence) and the remainder undivided part forms part of the hereditary patrimony (decedent's estate) of an unclaimed inheritance ("herencia yacente"). In this case, the Debtor as the surviving spouse is entitled to a

---

[5] Article 369 of the Civil Code in the English language states, "[t]he possession of hereditary property is understood as transferred to the heir without interruption and from the moment of the death of the testator, in case the inheritance be accepted. Any person who rejects an inheritance in a valid manner is considered as never to have possessed the same." 31 L.P.R.A. §1443.

-23-

quota, in usufruct over the entire patrimony pursuant to the dispositions of Articles 761-766 of the Civil Code, 31 L.P.R.A. §§2411-2416.

The court finds that the Debtor has a 50% undivided interest in the real property. Thus, 50% of the real property forms part of the Debtor's estate, given that the real property was abandoned by the Chapter 7 trustee.

The Civil Code does not regulate an unclaimed inheritance ("herencia yacente"). Commentator González Tejera explains that, "… an unclaimed inheritance is a patrimony that does not have an owner. It is a transitory absence of a titleholder that characterizes the unclaimed inheritance. The unclaimed inheritance lacks an heir that will temporarily preserve and administer the patrimony. In the unclaimed inheritance there has been an interruption in the ownership of the decedent's property, and as a result the rights and obligations that comprise the unclaimed inheritance are in a juridical limbo[6]." See Efraín González Tejera, Derecho de Sucesiones, T. 1: La sucesión intestal, 38, San Juan, (Universidad de Puerto Rico ed., (2001).  He further explains that the juridical figure of a *de facto administrator* has been recognized in estate law and that usually, one of the heirs, preferably the surviving spouse, or another person that is familiarized and interested with the patrimony is the one that carries out all acts of protection of the hereditary community. The *de facto administrator* informs the other heirs of all the transactions he or she has executed regarding the hereditary patrimony.[7]" Id. at 41-42.  The Supreme Court of Puerto Rico in Figueroa v. Property Registrar, 18 D.P.R. 260 (1912), held that in an unclaimed inheritance, while it remains vacant, the existence of the decedent's personality should be presumed. Also, in Sucesión Criado v. Martínez et al., 25 D.P.R. 334, 336 (1917), the Supreme

---

[6] Commentator González Tejera's explanation in the Spanish language: "… una herencia yacente es un patrimonio que no tiene dueño. Es la transitoria ausencia de un titular lo que en definitiva la caracteriza; la falta de alguien que a título de heredero se ponga frente al caudal y lo conserve y lo administer temporalmente. En la herencia yacente, como es lógico, ha habido una interrupción en la titularidad de los bienes del causante y como consecuencia, los derechos y las obligaciones que la component se encuentran, como se ha dicho en un limbo jurídico."

[7] Commentator González Tejera's explanation in the Spanish language: "Pero, como conlleva tiempo formalizarla designación de tales funcionarios, tanto en unas como en otras, especialmente en casos de herencias yacentes, la doctrina del Derecho de sucesiones ha reconocido la figura del administrador de facto. Usualmente, uno de los herederos, preferiblemente, el cónyuge supérstite, o cualquier otra persona interesada y familiarizada con los bienes relictos, lleva a cabo actos en protección de la comunidad hereditaria de los cuales rinde cuantas en su momento. Informa a los demás interesados sobre las transacciones que haya llevado a cabo en torno al patrimonio relicto."

-24-

Court held that, "[w]hile the inheritance remains vacant because the heirs designated by law have not accepted it, the personality of the decedent is presumed to exist."

"Given the absence of a detailed regulation on hereditary community in the Civil Code, the same is governed in the first place 'by the imperative provisions of the Civil Code; then by the will of the decedent; then by the provisions that, within the title of the division of the inheritance, is… applicable; and, [finally] by the general provisions contained in the [chapter on community assets], as they may be compatible with inheritance being a universal community." Kogan Huberman v. Property Registar, 125 D.P.R. 636, 651 (1990) citing Cintrón Vélez v. Cintrón de Jesús, 120 D.P.R. 39, 49 (1987). "[W]ith the acceptance each co-heir acquires an independent right over the inheritance… and the quota corresponding to him therein immediately enters into its patrimony as an autonomous and independent value that belongs only to him and which, therefore, he can dispose of freely" (Emphasis ours.) Ferrandis Vilella, op cit., p. 187" Kogan Huberman v. Property Registar, 125 D.P.R. at 652.

In the instant case the heirs that have been called by law have not accepted the inheritance. Therefore, a hereditary community may not be formed.  The Debtor's children repudiated their father's inheritance, but there is no evidence that they did so in accordance with Article 962 of the Civil Code, meaning that they did not file the deed of repudiation with the state court. Moreover, the parties did not provide information whether the Debtor has grandchildren since they would be the next to inherit in their own right and not by representation pursuant to Article 886 of the Civil Code, 31 L.P.R.A. §2609. Therefore, there is no hereditary community and no effective repudiation of inheritance at this time. However, this does not conclude the determination of whether the Debtor can claim a homestead exemption over the property that she resides.

Consequently, the court must analyze the intersection between the estate law pursuant to the Civil Code and the Home Protection Act. It is uncontested that the Debtor and her late

-25-

husband, prior to the filing of the bankruptcy petition filed with the Property Registry a home protection deed and the same was recorded on August 10, 2012[8].

Article 2 of the Home Protection Act provides:

"It is public policy of the Government of Puerto Rico to ensure homestead protection to all individuals or heads of family so that they may own and enjoy their principal residences while having them protected from foreclosure."

Article 3 of the Home Protection Act provides:

"Every individual or head of family residing in Puerto Rico shall be entitled to own and enjoy, under the homestead right concept, a parcel and the structure located thereon, or a residence under the regime established in the Condominiums Act, which belongs to him/her or whish he/she lawfully owns, and occupied by him/her or his/her family exclusively as a principal residence.

For the purposes of this chapter, the term domicile shall be defined as provided in §8 of Title 1." 31 L.P.R.A. §1854

Article 5 of the Home Protection Act, titled, *Homestead protection against attachment, judgment, or foreclosure,* provides:

"This right shall protect properties against attachment, judgment, or foreclosure for the payment of all debts, except for those debts established as exceptions in §1858a of this title." 31 L.P.R.A. §1858b.

Article 6 of the Home Protection Act, titled, *Homestead protection shall continue after death, abandonment, or divorce*, provides:

"The **protection** established in §1858b of this title shall continue after the death of any of the spouses for the benefit of the surviving spouse, so long as he/she continues to occupy the homestead, and after the death of both spouses for the benefit of their children until the youngest reaches legal age. Should a husband or wife abandon his/her family, the protection shall continue in favor of the spouse occupying the property as a residence; and, in the case of divorce, the court granting it may, in the decree, dispose of the homestead estate according to the equities of the case.

In the case of an unmarried person who is the head of a family, because such family, ascendents, and descendents to the third degree of consanguinity or affinity, is dependent upon such person for support, the protection shall continue after the death of such person for the benefit of his/her named family members, as

---

[8] Compare with In re Burgos Rivera, 544 B.R. 475 (Bankr. D.P.R. 2016) wherein the Debtor claims the homestead exemption over a real property that forms part of a hereditary community. The court held that the real property was not property of the bankruptcy estate and the Home Protection Act is devoid of any specific provision which provides the homestead exemption over a real property that forms part of a hereditary community to a descendant of legal age when his or her ascendant passes away.

long as they continue to occupy the protected home, and until the youngest of such dependents reaches legal age." 31 L.P.R.A. §1858c.

Article 9 of the Home Protection Act, titled, *Claim of homestead protection in purchase deed; record in the Property Registry and cancellation of the homestead right in the Property Registry*, provides:

"Any individual or head of family who acquires a rural or urban parcel to establish and create his/her homestead thereon shall state so in the deed after having been duly advised on this duty by the authorizing notary, who shall attest to such fact; and upon recording the same, the Property Registrar shall enter such statements in the body of the registration indicating that the owner has filed a Declaration of Homestead for such property. This entry shall serve as public notice.

If the parcel has already been registered in the name of such individual or head of family, it shall suffice for the owner of owners of such parcel to execute a declaration before a notary public stating that the parcel is covered by homestead protection for the Property Registrar to make a marginal notation on the appropriate record.

Both documents, that is, the deed and the declaration, as the case may be, shall state that such property shall be used for residential purposes and that the owner has not declared any other property in or outside Puerto Rico as such. The owner shall also be advised, in both documents, on the potential sanctions to which any person shall be subject if he/she attempts to or unlawfully files a declaration of Homestead for more than one property or in favor of another person.

If a person already owns another property that has been declared as his/her homestead, the existence of such other property and the fact that such property shall cease to be his/her homestead as of said time shall be acknowledged in the document; additionally, such person shall have the obligation to cancel the declaration of homestead of the former property in the Property Registry, so that the Registrar may record such cancellation in the marginal notation of the appropriate record. Such cancellation may be made through the same deed of the new property which shall be covered by homestead protection or through a declaration.

Insofar as the property has been declared a homestead, the Property Registrar shall be required to make a notation stating that the property was so declared by its owner.

Such declarations or notations shall only constitute prima facie evidence of the homestead right of such property; no person may claim more than one property as a protected homestead." 31 L.P.R.A. §1858f.

Article 12 of the Home Protection Act, titled, *Claiming the homestead right in a sale resulting from judgment or foreclosure*, provides that:

-27-

"Homestead right shall be claimed through a motion filed with the court within thirty (30) days as of the date in which foreclosure against the properties belonging to the defendant has been petitioned in order to comply with a ruling of a competent court; or from the time in which a pre-judgment attachment or garnishment or any other pre-judgment remedy is requested against the property of the defendant to guarantee compliance said ruling.

Such motion shall be sworn by the owner or owners, including a description of the property being protected as entered in the Registry and a statement to the fact that the owner or owners thereof used such property as a principal residence before the services of process of foreclosure was perfected and that they have not declared any other property as their homestead.

The party requesting foreclosure shall have ten (10) days to answer the claim of homestead right and, should a controversy arise, the court shall hold an evidentiary hearing in which the parties shall present their arguments and the appropriate evidence supporting their allegations. The court shall issue its determination within fifteen (15) days after the evidence has been presented. Once the court's ruling is issued, the aggrieved party may appeal such ruling within a jurisdictional term of fifteen (15) days. In the event that the court determines that homestead protection does not apply, the judicial sale of such property shall not be carried out until such determination becomes final and binding.

No rural or urban parcel shall be sold by virtue of judgment or foreclosure if it has been claimed to be or held as homestead, whether or not it has been registered as such in the Property Registry, unless any of the exemptions provided in §1858a of this title applies.

However, a rural or urban parcel may be sold by virtue of a judgment or foreclosure if, after having been served, the person acquires a property of higher value and it becomes his/her principal residence. If such situation occurs, the homestead protection shall be extended up to the value of the protected property at the time of the service of process. Likewise, if the money was protected as provided in §1858d of this title at the time the service of process was perfected, the protection shall be extended up to the limit of such amount." 31 L.P.R.A. §1858i.

The court must address the applicability of the Supreme Court of Puerto Rico's decision in Rivera García v. Hernández Sánchez, Property Registrar, 189 D.P.R. 628 (2013) as an integral part of our legal analysis.

In Rivera García v. Hernández Sánchez, Property Registrar, the real property was registered in the Property Registry under the petitioner's name, Antonia Rivera García and her

-28-

deceased spouse. After the passing of her husband, half of the real property became part of the decedent's hereditary patrimony which is co-owned by the hereditary community comprised of Mrs. Rivera García and her three (3) children. Subsequently, the hereditary right of Mrs. García and her three (3) children that forms part of the hereditary community was registered in the Property Registry. The issue before the Supreme Court was whether the Home Protection Act required that all of the members of the hereditary community execute the Home Protection deed of the real property that formed part of a hereditary community in order for the Property Registrar to register the same. The Supreme Court determined that if a property has more than one titleholder because it forms part of a community of property then it follows that all of the titleholders must appear to the authorization of the notarial deed in which the homestead right is being claimed. Rivera García v. Hernández Sánchez, Property Registrar, 189 D.P.R. at 642[9].

The case before us has some marked differences from the case of Rivera García v. Hernández Sánchez, Property Registrar.[10] In the instant case, the Debtor and her husband presented the Home Protection Deed for registration in the Property Registry and the same was recorded on August 10, 2012. Moreover, unlike Rivera García v. Hernández Sánchez, Property Registrar, in this case there is no hereditary community given that an undivided half belongs to the Debtor as a member of the conjugal partnership and the remainder undivided part forms part of the hereditary patrimony (decedent's estate) of an unclaimed inheritance. As previously discussed, an unclaimed inheritance lacks an heir that will temporarily preserve and administer

---

[9] "Por todo lo anterior, nos parece que el texto de la Ley Núm. 195, *supra*, y el derecho de comunidad de bienes exigen que en casos de propiedades con más de un dueño, todos los propietarios comparezcan a la autorización del Acta Notarial que reclama la anotación del derecho a hogar seguro." Rivera García v. Hernández Sánchez, Property Registrar, 189 D.P.R. at 642.

[10] See also In re Martínez Colón, 525 B.R. 1 (Bankr. D.P.R. 2015) in which the court held that for bankruptcy purposes, the owner or owners of a real estate property may claim a homestead exemption as long as it constitutes his/her/their principal residence, and therefore, each co-owner is entitled to claim exemptions under 11 U.S.C. §522(m).

the patrimony. In an unclaimed inheritance there is an interruption in the ownership of the decedent's property, and as a result the rights and obligations that comprise the unclaimed inheritance are, as aptly labeled by commentator González Tejera, in a juridical limbo. In an unclaimed inheritance there is the juridical figure of the *de facto administrator*, which is preferably the surviving spouse that is familiarized with the patrimony and carries out all acts necessary to protect the hereditary patrimony.

Article 6 of the Home Protection Act specifically provides for the continuance of the homestead protection for these particular scenarios: (i) for the benefit of a surviving spouse: (ii) if both spouses passed away, the homestead protection would be extended for the benefit of the children until the youngest reaches the legal age; (iii) in the case that the husband and wife abandon his/her family, the homestead protection would continue for the benefit of his/her family; (iv) in case of a divorce, the divorce decree will dispose of the homestead estate pursuant to the equities of the case; and (v) in the case of an unmarried person that is the head of a family that passed away, the homestead protection will continue for the person's dependents and ascendants, as long as they continue to occupy the protected home and until the youngest dependent reaches the legal age. 31 L.P.R.A. §1858c. Thus, in this particular case, the provisions of Article 6 of the Home Protection Act are applicable to the extent that the protection established in §1858b continues for the benefit of the surviving spouse as long as he or she continues to occupy the homestead. See 31 L.P.R.A. §§1858b & 1858c.

The homestead protection is afforded to the surviving spouse so that he or she is able to continue occupying the homestead. The protection afforded by the amended Home Protection Act is greater than the one under the prior law which was limited to a monetary amount (up to $15,000 by Act No. 116 of May 2, 2003 to amend sections 1 and 5 of Act No. 87 of May 13, 1936). However, the amended Home Protection Act in much the same way, conceptually as a protection,

-30-

as the prior law[11], was structured to be independent of the hereditary rights of the heirs under the Civil Code. Commentator González Tejera explained that under the prior homestead protection law, "[p]ursuant to estate law, the inheritance which constitutes the homestead of individuals and of their families is not transferable. The Home Protection Act, a contribution of American Law to our system of Law did not evolve in the same manner as its Northern counterpart; it protects against attachment and foreclosure a parcel of land that has a structure (property/residence) which belongs to a head of household and whose value does not exceed $1,500. The key point is that the homestead protection passes to the surviving spouse that continues to occupy the same upon the death of his or her spouse, meaning that the surviving spouse receives the homestead protection by the disposition of this law, independently of the hereditary rights of the heirs pursuant to the Civil Code. Upon the head of household's death, the surviving spouse or his or her concubine and the children that resided with them would continue to reside in the homestead until the youngest of the children would reach the majority of age. It is important to understand that the amount of our rickety (meager/scant) homestead is out of the reach of the decedent's heirs and in particular out of the reach of his or her creditors, except for related credits related to the purchase or improvements of the real property that constitutes the homestead." [12] See Efraín

---

[11] Article 3 under the prior homestead law stated the following: "[t]he exemption established in the preceding section shall continue to subsist after the death of the head of the family, for the benefit of the surviving spouse so long as the latter shall continue to occupy said homestead, and after the death of both spouses, for the benefit of their children until the youngest child shall have reached its majority. In case the husband or wife shall desert his or her family, the exemption shall continue in favor of the spouse occupying the premises as a residence; and in case of a divorce, the court granting the same may dispose of the homestead according to the equity of the case.

In the case of an unmarried person who is the head of the family by reason of the fact that his or her ascendants or descendants to the fourth degree, foster parents, or adopted or foster children, depend on him or her for their subsistence, the exemption shall continue to subsist after the death of such person, for the benefit of the aforesaid relatives so long as they shall continue to occupy said homestead, and until the youngest of said dependents shall have reached his majority. 31 L.P.R.A. §1853.

[12] Commentator González Tejera as to the prior homestead protection law in the Spanish language: "Tampoco es transmisble, según las normas del Derecho de sucesiones, la heredad que constituye el hogar seguro de unas persona y de su familia. La Ley de Hogar Seguro, una contribución del Derecho norteamericano al Derecho patrio que no creció como su homólogo del Norte, protégé contra embargo o ejecución del solar y edificación de toda persona que sea jefe de familia y cuyo valor no exceda de $1,500. Y lo que importa para los fines de esta obra es que el hogar seguro pasa al cónyuge supérstite que continue ocupándolo al morir su consorte, de manera que lo recibe el viudo o la viuda por disposición de esta ley, independientemente de los derechos hereditarios de las partes, según el Código Civil. Al fallecer el jefe de familia, su cónyuge viudo o su concubino o concubina y los hijos que con ellos vivían continuarán disfrutando el hogar seguro, hasta que el menor de los hijos llegue a la mayoría de edad. Cabe tener en

-31-

González Tejera, Derecho de Sucesiones, T. 1: La sucesión intestal, 361-362, San Juan, (Universidad de Puerto Rico ed., 2001). Article 6 of the Home Protection Act was designed (created as a protective legal mechanism) to protect the surviving spouse from heirs that could leave the surviving spouse without a homestead.

In the instant case, the Debtor has a one-half undivided interest in the real property which forms part of the Debtor's estate. The remaining one-half undivided interest forms part of an unclaimed inheritance, of which the debtor is entitled to a quota in usufruct over the entire hereditary patrimony. The Home Protection Act affords the Debtor as a surviving spouse, the homestead right to protect the homestead against attachment, judgment, or foreclosure for the payment of debts. See 31 L.P.R.A. §§1858b and 1858c.

*Lien Avoidance Pursuant to 522(f)*

A debtor under 11 U.S.C. §522(f) can avoid the fixing of a judicial lien on property that is exempted from the bankruptcy estate. Section 522(f) provides in pertinent part,

> "[n]otwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on *an interest of the debtor in property* to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
> > (A) a judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5)." 11 U.S.C. §522(f)(1)(A) (*emphasis ours*).

Moreover, section 522(f)(2)(A) provides:

> "[f]or the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—
> > (i)    the lien;
> > (ii)   all other liens on the property; and
> > (iii)  the amount of the exemption that the debtor could claim if there were no liens on the property;
>
> exceeds the value that the debtor's interest in the property would have in the absence of any liens." 11 U.S.C. §522(f)(2)(A)

---

cuenta que la cuantía de nuestro raquítico hogar seguro está fuera del alcance de los herederos del causante, testamentarios o ab intestate, y muy particularmente, fuera del alcance de sus acreedores, except por créditos relacionados con la adquisición o mejoras del bien que constituya el hogar seguro."

To avoid a judicial lien pursuant to section 522(f)(1), three (3) factors must be determined; namely: (i) that there was a fixing of a lien on an interest of the debtor in property; (ii) that such lien impairs an exemption to which the debtor would have been entitled; and (iii) that such lien is a judicial lien. In this case, there is no controversy that the lien is a judicial lien. Therefore, this court will focus on the first two (2) factors. See Culver, LLC v. Chiu (In re Chiu), 304 F. 3d 905 908-909 (9th Cir. 2002) quoting Catli v. Catli (In re Catli), 999 F. 2d 1405, 1406 (9th Cir. 1993); See also Wilding v. Citifinancial Consumer Fin. Servs. (In re Wilding), 475 F. 3d 428, 431 (1st Cir. 2007).

In Farrey v. Sanderfoot, 500 U.S. 291, 292 (1991), the Supreme Court held that a debtor may not use 11 U.S.C. §522(f)(1) to avoid the fixing of a lien on an interest he did not possess before the lien attached because the divorce decree simultaneously created the parties' interests in the property and the lien. The Supreme Court in Farrey v. Sanderfoot further explained that, "[o]n the assumption that the parties characterize Wisconsin law correctly, Sanderfoot must lose. Under their view, the lien could not have fixed on Sanderfoot's pre-existing undivided half interest because the divorce decree extinguished it. Instead, the only interest that the lien encumbers is debtor's wholly new fee simple interest. The same decree that awarded Sanderfoot his fee simple simultaneously granted the lien to Farrey" Id. at 299.

In the instant case, the Creditor contends that the Debtor may not avoid the judicial lien because at the time the lien fixed on the real property the Debtor did not have a property interest because the real property belonged to the conjugal partnership. The Creditor argues in the alternative that at best, the Debtor has a 50% interest over the property since the remaining 50% corresponds to the Debtor's husband share or rather to his estate. Under this scenario, the Debtor could avoid the lien only as to the interest she possessed at the time the lien was fixed which is 50% of the property but the decedent's remaining 50% interest would be unavoidable. Thus, the

first hurdle is establishing the Debtor's interest in the real property (principal residence) before the lien attached.

The first step in ascertaining a lien avoidance issue under section 522(f)(1) is determining whether the debtor held an interest in the real property at the time the lien was affixed. After considering the uncontested facts and applicable law, this court concludes that prior to the fixing of the judicial lien, the Debtor held an interest in the property that she jointly co-owned with her late husband.  Therefore, the first element required for lien avoidance under section 522(f)(1) is satisfied.

The Supreme Court in Int'l Charter Mortgage Corp. v. Registrador, 110 D.P.R. 862, 867-868 [10 P.R. Offic. Trans. 1126, 1133] (1981) concluded that the marital community does not absorb the individual personality of the spouses that constitutes the same; rather the individual personalities of the spouses which form the marital community subsist at all times. The Supreme Court held the following:

> "[t]he marital community does not absorb the individual personality of the spouses that make it up.  This eclipse of personality did not occur, as have seen, under the unitary regime where the husband was the party in charge of action and management; and is even farther away in our present subjective regime, after the repeal of art. 1312 (which reserved the management  to the husband); and of subsection 3 of art. 1215, which imposed limits in the married woman's capacity to enter into contracts; for the new art. 91 (31 L.P.R.A. §284) requires the written consent of both to alienate or oblige real and personal property by onerous title. The veil separating the marital community from the persons who form it is of crystal clear transparency."

The Supreme Court in the case of Montalván v. Rodríguez, 161 D.P.R. 411, 420-421 (2004) stated the following as to the conjugal partnership and the interests of the spouses in the same:

> "[o]ur legal system favors the [conjugal partnership] regime, which is primarily governed by Puerto Rico Civil Code secs. 1295-1326 (31 L.P.R.A. §§3621-[3701]). The rules of articles of partnership apply suppletorily to the conjugal partnership. Civil Code sec. 1298 (31 L.P.R.A. §3624). It is not profit-oriented, as is the case with ordinary partnerships; rather, it exists to achieve the particular

aims of marriage. Int'l Charter Mortgage Corp. v. Registrador, 110 D.P.R. 862, 866 [10 P.R. Offic. Trans. 1126, 1131] (1981); García v. Montero- Saldaña, 107 D.P.R. 319, 322 [7 P.R. Offic. Trans. 353] (1978).

While the conjugal partnership exists, the spouses are co-owners and co-administrators of all the community property, without any distinctions as to shares. '[T]he bulk of the community property is composed of assets and rights that are directly and immediately subject to the payment of family debts and, therefore are jointly owned by the spouses with no particular attribution of shares.' Joaquín J. Rams Albesa, La sociedad de gananciales 28, Madrid, Ed. Tecnos (1992)" Montalván v. Rodríguez, 161 D.P.R. 411, 420-421.

Thus, the respective ownership interests in the jointly owned property of the spouses does not disappear with the conjugal partnership. Moreover, in much the same way as the Mortgage Law in Spain, under the Puerto Rico Mortgage Law, there are no registrations entered in the name of the conjugal partnership (marital community) as an "… artificial person independent of the physical persons who have formed it, but rather the property and rights are recorded in the name of the husband or the wife, with certain circumstances or data that allow it to be attributed to a patrimonial group with particular ends and a characteristic regime." Int'l Charter Mortgage Corp. v. Registrador, 110 D.P.R. 862, 865 [10 P.R. Offic. Trans. 1126, 1129]. As to the development (evolution) of the conjugal partnership, Professor Fraticelli Torres explains it as follows: "[i]n 1968, the Supreme Court recognized the distinct and particular juridical figure (entity) of the conjugal partnership because it declared the incapacity of a married woman to represent the same legally, such faculties were afforded to the husband as sole and legitimate administrator of the conjugal partnership. By the year 1981 new legislation had been passed, and thus, the court accepts the juridical figure (entity) of the conjugal partnership but in an "attenuated" manner due to the new circumstances that diluted the existing differentiation between the spouses in their own personal capacity and the society constituted by them. This opinion concludes that the conjugal partnership creates the concept of joint ownership of conjugal property, meaning that both spouses

-35-

are indistinctly owners of a patrimony, and whose property rights over a particular share of the patrimony may only be materialized (effective) through the dissolution and liquidation of the conjugal partnership. Unlike a joint property regime ("comunidad de bienes"), in a joint community (marital community), both are indistinctly the owners of a patrimony, without any particular allocation of shares (quotas) due to the unitary character of the marital patrimony." [13] M. Fraticelli Torres, *Un nuevo acercamiento a los regímenes económicos en el matrimonio: la sociedad legal de gananciales en el derecho puertorriqueño*, 39 Rev. Jur. U.I.P.R. 113, 134 (2004).

Even though, the conjugal partnership is considered a separate entity with distinct personality, the husband and wife have equal participation as co-owners and co-administrators of all the community property without any distinctions as to shares. Thus, both spouses are indistinctly, the owners of the conjugal partnership property.  This court concludes that at the moment the judicial lien attached to the real property, the Debtor had an ownership interest in the same. Under the conjugal partnership regime, the real property was jointly owned by the spouses and as such the Debtor was a co-owner of the real property.

The facts and circumstances of this case are inapposite to the ones in Farrey v. Sanderfoot. In Farrey v. Sanderfoot, the Supreme Court analysis centered upon a critical inquiry; namely; whether the debtor ever possessed the interest to which the lien fixed, before it fixed. Id at 299.

---

[13] M. Fraticelli Torres, *Un nuevo acercamiento a los regímenes económicos en el matrimonio: la sociedad legal de gananciales en el derecho puertorriqueño*, 39 Rev. Jur. U.I.P.R. 113, 134 (2004): "En 1968, el Tribunal Supremo reconoció la personalidad jurídica propia y particular de la sociedad de gananciales al declarar la incapacidad de la mujer para representarla legalmente, facultad que correspondía al marido, administrador legítimo único en ese entonces. En 1981, a la luz de una nueva legislación, el tribunal acepta la permanencia de la personalidad jurídica de la sociedad, pero "atenuada" a no más por las nuevas circunstancias que diluyeron la diferenciación existente entre los cónyuges personalmente y la sociedad por ellos compuesta. Concluye en esta opinión que la sociedad de gananciales crea la pertenencia "en mano común" de los bienes comunes, lo que quiere decir que ambos cónyuges son dueños indistintamente del patrimonio común, pero cuyo derecho de propiedad sobre una porción particular de los bienes puede hacerse efectivo únicamente al momento de la disolución y liquidación de la sociedad. A diferencia de la comunidad de bienes, en la pertenencia en mano común, se es dueño de todo, sin especial determinación de cuotas, por el carácter unitario del patrimonio matrimonial."

In the instant case, at the time the judicial lien attached to the real property, the real property was jointly owned by the Debtor and her husband. The Debtor held an ownership interest over the real property before the lien attached. In <u>Farrey v. Sanderfoot</u>, 500 U.S. 291, 299-300, Farrey's lien encumbered only Sanderfoot's wholly new fee simple interest, not any pre-existing interests that Sanderfoot may have had in the residence prior to the divorce decree ("Sanderfoot took the interest and the lien together, as if he had purchased an already encumbered estate from a third party. Since Sanderfoot never possessed his new fee simple interest before the lien 'fixed,' §522(f)(1) is not available to void the lien"). Unlike, <u>Farrey v. Sanderfoot</u>, in this case the lien did not attach to newly-created property interests. The nature of the Debtor's ownership interest in the real property for lien avoidance purposes, namely when the lien attached, is the same ownership interest that she has at the time she requested the homestead exemption. The Debtor's ownership interest stems from a real property that she jointly owned under the conjugal partnership regime with her husband and due to the passing away of Debtor's husband, the conjugal partnership was dissolved. Pursuant to the Civil Code (state law) the surviving spouse (the Debtor) is entitled to receive one-half of the property acquired during the marriage.

Thus, the <u>Farrey v. Sanderfoot</u> holding is inapplicable to the instant case because the Debtor held a pre-existing interest in the property to which Creditor's judicial lien attached. <u>See In re Mariano</u>, 311 B.R. 335, 341 (Bankr. D. Mass. 2004)("Farrey does not stand for the proposition that a lien, once 'affixed may not be avoided").

One of the issues that is being argued is whether a modification or transformation in the debtor's property interest affects the lien avoidance mechanism under section 522(f). The cases following <u>Farrey v. Sanderfoot</u> fall generally into three (3) categories; namely; (i) the cases in which the debtor had no pre-existing interest in the property at the time the judicial lien attached and acquired the property subject to the lien; (ii) the cases in which the creation of the lien and

the creation of the debtor's interest in property were simultaneous; and (iii) the cases in which the debtor had a pre-existing interest in the property at the time the lien attached but in which pre-existing interest was modified or reacquired after disposition. Laura B. Bartell, *Extinguishment and Creation of Property Interests Encumbered by Liens- The Strange Legacy of Farrey v. Sanderfoot*, 87 Am. Bankr. L.J. 375 (2013). The instant case falls under the third category of cases, in which a debtor had an ownership interest in the property at the time the lien attached and at the time the debtor filed for bankruptcy, the debtor continued to have an ownership interest in the property. "Most courts conclude that, so long as the debtor had a pre-existing interest in property at the time the lien was affixed, the fact that the interest in the property held by the debtor at the time of the bankruptcy filing was a different interest does not affect the debtor's ability to avoid the lien. So, for example, in Law Offices of Moore & Moore v. Stoneking, [225 B.R. 690 (B.A.P. 9th Cir. 1998)], the lawyer representing the former wife of the debtor in state divorce proceedings obtained a judicial lien on community property of the debtor and his former spouse (the marital home) to secure a judgment of fees (a community obligation). Subsequently, debtor's former spouse quitclaimed to the debtor her interest in the home. The court concluded that, unlike in Sanderfoot, the debtor had a pre-existing community property interest in the home to which the lien attached and the augmentation of the debtor's interest in the home by the transfer of the former spouse's interest did not eliminate his right to utilize §522(f) to avoid the lien. Any other conclusion, the court held, would treat debtors who divorce after a lien attaches differently from debtors who remain married, an arbitrary distinction" Id. at 388-389.

In the scenario before us, affording a disparate treatment in the untimely death of a spouse, would constitute an arbitrary distinction. Therefore, a debtor may avoid a lien under section 522(f) if the debtor had a property interest prior to the moment the lien affixed to the same, as, "…section 522(f) does not explicitly or implicitly require an identity of interest between the interest

of the debtor at the time the lien attached and the interest of the debtor at the time of the bankruptcy filing" Id. at 398. "There is nothing in §522(f)(1) that mandates an identity between the debtor's interest in this exempt estate property at the time of the bankruptcy filing (let us call it the debtor's 'bankruptcy interest') and the debtor's interest in property to which the lien was originally affixed (which we can call the 'original interest')." Id. at 400[14].

[14] As to this particular issue, Professor Bartell explains it in the following manner:

"When the debtor seeks to avoid the fixing of a lien on an interest in property under §522(f)(1), necessarily the property to which the lien is attached must be property of the estate in which the debtor has an interest at the time of the bankruptcy filing. If the debtor had no interest in the property, the property would not be included in the estate under §541(a) and the lien could not impair an exemption to which the debtor would otherwise be entitled under §522(b). Therefore, §522(f)(1) operates only with respect to a lien on an interest of the debtor in property that constitutes property of the estate under §541(a) and is exempt under §522(b), both concepts that operate as of the commencement of the case.

There is nothing in §522(f)(1) that mandates an identity between the debtor's interest in this exempt estate property at the time of the bankruptcy filing (let us call it the debtor's 'bankruptcy interest') and the debtor's interest in property to which the lien was originally affixed (which we can call the 'original interest'). Of course, there must be some relationship between the two, or the lien that encumbered the original interest would not continue to attach to the bankruptcy interest.

But the lien could continue against the bankruptcy interest even if that bankruptcy interest were lesser or greater than the original interest in the property. For example, if the debtor had a fee simple interest in the property to which the lien attached (i.e., original interest is a fee simple interest), the lien would continue to exist on the property notwithstanding the disposition of a partial interest in the property. Indeed, anyone acquiring an interest in the property to which the lien attached would be acquiring that interest subject to the lien. Therefore, if the debtor filed for bankruptcy holding a tenancy in common or joint tenancy interest in the same property (i.e., the bankruptcy interest is that lesser interest), the lien still would impair the debtor's interest in exempt property and avoidance should be permitted.

Similarly, if the debtor owned an interest in the property lesser than that of a fee simple interest- such as a tenancy in common, joint tenancy, tenancy by the entirety, or a community property interest- at the time the lien attached (so that the original interest was that lesser interest), the lien would continue to encumber the property, even of the debtor subsequently became the owner of the property in fee simple. If the debtor then filed for bankruptcy protection, the lien would impair the debtor's exemption in that property even though the bankruptcy interest was greater than the original interest, and the lien should be avoidable.

Section 522(f) essentially asks us to look at the debtor's relationship to the property at two points in time: first, Sanderfoot tells us that §522(f) requires that we look at the moment at which the judicial lien attached, and determine whether the debtor had a pre-existing interest in the property at that time; second, we must look at the debtor files for bankruptcy protection, and determine whether the debtor has an interest in property that is property of the estate, for which the debtor may claim an exemption. If the debtor has the requisite connection to the property at each of those two moments, even if that connection consists of an interest to which we would give a different label as a matter of property law, the preconditions to avoidance under §522(f) are satisfied. There is no statutory basis for examining any changes in the nature of the property interest in which the lien was attached, or transfers of that property interest, between the time of attachment and the time the lien avoidance is sought." Id. at 399-401.

-39-

This court concludes that the modification of debtor's property interest does not affect his or her ability to employ the lien avoidance mechanism afforded by section 522(f). The crucial point is that the debtor had an ownership interest before the lien affixed to the property and at the time of the bankruptcy filing.

The second and last factor that the court must determine is whether the judicial lien impairs an exemption to which the debtor would have been entitled to. The Supreme Court in Owen v. Owen, 500 U.S. 305, 310-313, held that the proper question to ask in ascertaining whether the debtor "would have been entitled to" is whether the lien impairs a state or federal exemption to which the debtor would have been entitled to but for the lien itself. Therefore, the question that must be answered is whether the judicial lien impaired the homestead exemption as of the bankruptcy petition date. See In re Wilding, 475 F. 3d 433. "Section 522(f) seeks to implement the strong public policies -- in particular, 'the fresh start policy of the Code which encourages the full application of the Code's exemption provisions,' In re Quackenbos, 71 B.R. 693, 695 (Bankr. E.D. Pa. 1987) -- that are at play when lien avoidance is sought.  As the Supreme Court has observed, §522(f) was designed to mitigate the impact of judicial liens 'because they are a device commonly used by creditors to defeat the protection bankruptcy law accords exempt property against debts.' Farrey, 500 U.S. at 297-98. These policies support what we conclude is the most reasonable reading of §522: that, for the purpose of retrospective relief, the value of the lien is to be calculated as of the filing of the petition." Id. at 433.  This court applies such rationale to the facts of this case.

The Debtor disclosed in Schedule A that the current value of the residential property is in the amount of $115,000 and the amount of the secured claim is $98,709.05. The Debtor in *Schedule D- Creditors Holding Secured Claims* disclosed that the two (2) secured claimants were BPPR with a mortgage claim over the residential property in the amount of $20,520.98 and Mr.

Castillo with a judicial lien recorded against the real property in the amount of \$78,188.07. The Debtor's interest in the real property is one-half of the value disclosed which is in the amount of \$115,000, thus her interest in the real property absent any liens is \$57,500.

Article 6 of the Home Protection Act affords the surviving spouse a homestead protection against attachments, judgments, or foreclosures 31 L.P.R.A. §§1858b and 1858c. Article 6 of the Home Protection Act reads in pertinent part, "[t]he protection established in §1858b of this title shall continue after the death of any of the spouses for the benefit of the surviving spouse, so long as he/she continues to occupy the homestead, and after the death of both spouses for the benefit of their children until the youngest reaches the legal age." 31 L.P.R.A. §1858c. Consequently, the judicial lien (\$78,188.07) in addition to the mortgage claim (\$20,520.98) over the residential property and the amount of the homestead exemption (\$115,000) that the debtor could claim if there were no liens on the property exceeds the value of the debtor's interest in the real property. The Debtor has at all relevant times, used the property exclusively as her principal residence. Thus, fixing percentages based on ownership rights is inapposite. Compare with In re Veguilla Navarro, 504 B.R. 316 (Bankr. D.P.R. 2014); See also; In re Otero Nazario, 533 B.R. 1 (Bankr. D.P.R. 2015), holding that debtor was entitled to claim the homestead exemption in full even if part of the principal residence was leased. Consequently, the Debtor may avoid Creditor's judicial lien in its entirety under Section 522(f).

Conclusion

In view of the foregoing, this court holds that in this particular case, the Debtor held a pre-existing interest in the real property to which Creditor's judicial lien attached and thus, the judicial lien is subject to avoidance pursuant to 11 U.S.C. §522(f). The Creditor's *Motion for Summary Judgment and Memorandum of Law in Support Thereof* (Docket No. 61) is hereby denied. Thus, the Creditor's Objection to Debtor's Claim of Exemption (Docket No. 30) is hereby denied and

-41-

Debtor's *Motion Seeking Avoidance of Judicial Lien Pursuant to 11 U.S.C. §522(f)* (Docket No. 48) is hereby granted.

SO ORDERED.

In San Juan, Puerto Rico, this 19th day of June, 2017.

Enrique S. Lamoutte
United States Bankruptcy Judge

-42-